FENNEMORE CRAIG, P.C.
Cathy L. Reece (005932)
Keith L. Hendricks (012750)
3003 N. Central Ave., Suite 2600
Phoenix, Arizona 85012
Telephone: (602) 916-5343
Facsimile: (602) 916-5543
Email: creece@fclaw.com
        khendric@fclaw.com
Attorneys for ML Manager LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| MORTGAGES LTD., | Civ. No. 10-1665-PHX-MHM |
| Debtor. | Bk No. 2:08-bk-07465-RJH |
| | (Prior BAP No. AZ-10-1276) |
| | **ML MANAGER, LLC'S MOTION TO DISMISS REV-OP GROUP'S APPEAL OF THE ORDER APPROVING THE MOTION TO APPROVE SETTLEMENTS WITH GRACE ENTITIES** |

ML Manager, LLC ("ML Manager") respectfully requests that this Court dismiss the Rev-Op Group's appeal of the bankruptcy court's approval of the settlement with the "Grace Entities"[1] for two separate, yet equally compelling reasons. First, and most importantly, the parties have already substantially consummated their settlements, thus rendering the appeal moot. Despite a specific offer from the bankruptcy court to set a date for a hearing on a potential motion by the Rev-Op Group to stay the effectiveness of the order approving the settlements, and despite presentation of evidence that the settlement would be consummated within days if there was no stay pending appeal due to certain

---

[1] The "Grace Entities" consist of the five co-appellees in this appeal: Osborn III Partners, LLC; Central & Monroe, LLC; 70th Street Property, LLC; Portales Place Property, LLC; and 44th & Camelback Property, LLC.

1    exigencies that existed, the Rev-Op Group declined the bankruptcy court's offer to set a

2    hearing date and did not attempt in any way to seek a stay before the bankruptcy court or

3    this Court.  Instead, the Rev-Op Group sat idly by while the settlement was consummated,

4    documents were executed, escrow was closed, foreclosure sales were held, deeds of trust

5    in favor of the Grace Entities or their designees (i.e., their third-party creditors) were

6    executed and recorded, possession of four separate properties was delivered by the Grace

7    Entities to ML Manager, liability was undertaken, and fees and costs incurred.  In short,

8    the parties' rights have been inextricably altered due to the Rev-Op Group's failure to take

9    any action to obtain a stay.  Accordingly, this appeal is now moot.

10        Moreover, the issues identified by the Rev-Op Group constitute an impermissive

11   collateral attacks on the Plan.  The Supreme Court has recently reaffirmed that the law

12   does not permit these types of attacks.  Accordingly, these issues should be dismissed.

13   **I.     FACTUAL BACKGROUND**

14        This appeal arises out of the implementation of the Plan of Reorganization (the

15   "Plan") confirmed in the Mortgages Ltd. bankruptcy by order entered May 21, 2009 (the

16   "Confirmation Order").  As the Court may recall from the other appeals that have been

17   brought before this Court arising out of the Mortgages Ltd. bankruptcy, the Plan

18   essentially removed Mortgages Ltd. as the agent for the management of the loans at issue

19   in the bankruptcy, and created a new entity, ML Manager, to act as agent.  In addition,

20   certain interests in the loans were transferred into entities known as Loan LLCs, with ML

21   Manager acting as manager of the Loan LLCs.  Individual investors, often referred to as

22   Pass-Through Investors, had the option, but not the obligation, to transfer their interests

23   into their respective Loan LLC(s).  It is ML Manager's position that it is the assignee of

24   all of Mortgages Ltd.'s rights to represent all Pass-Through Investors as their authorized

25   agent in dealing with loan management issues.  In addition to its rights as agent under

26   certain agency agreements, the Plan provided additional express authorization to deal with

FENNEMORE CRAIG, P.C.

PHOENIX

2337281.3/28149.010

the Grace Entities.  In the particular case of the Grace Entities, the Confirmation Order (which approved the Plan as modified therein) expressly provided for a binding alternative dispute resolution procedure with ML Manager authorized to act for all investors in the Grace Entities' loans.[2]  For purposes of the issues in this appeal, ML Manager relied solely on that express authorization in the Confirmation Order for its authority to enter into and complete the settlements at issue.

Paragraph V of the Confirmation Order, now a final order from which no appeal was ever taken, set forth the terms of a negotiated settlement reached between the Plan proponent, the Grace Entities and their respective guarantors.  The Grace Entities had borrowed money from Mortgages Ltd., and alleged that Mortgages Ltd. had caused them to incur substantial damages due to its failure to fully and timely fund those loans. Indeed, two of the Grace Entities filed the initial involuntary bankruptcy petition against Mortgages Ltd. in June 2008.

The Grace Entities were active litigants during the pendency of the bankruptcy and objected to the Plan, but their objections were resolved by an agreement that ML Manager would mediate, and if necessary arbitrate, the claims on behalf of all investors and all other interest holders in the Grace Entities' loans.  The Rev-Op Group was represented by counsel present in the courtroom when the settlement with the Grace Entities was described on the record.  The Rev-Op Group did not object at that time; they did not object when a draft of the Confirmation Order containing the alternative dispute resolution procedure (in Paragraph V thereof) was circulated to their counsel; nor did they object when the form of the Confirmation Order was lodged with the Bankruptcy Court.  More importantly, the Rev-Op Group never appealed from the Confirmation Order, which is a final order that cannot be collaterally attacked in this appeal.

---

[2] A copy of the Confirmation Order setting for the agreement with the Grace Entities at Paragraph V is attached as Exhibit 1.

1      After several mediation sessions and months of negotiations, and after incurring

2   substantial fees and costs in implementing the dispute resolution procedure set forth in

3   Paragraph V of the Confirmation Order, ML Manager finally reached a series of

4   settlement agreements with the Grace Entities.   Under those settlements, after the

5   Effective Date (as defined in the agreements), the parties agreed to fundamentally alter

6   their rights by consummating the agreements, executing escrow agreements, and

7   recording certain documents.   Among other things, the Grace Entities agreed to allow

8   their properties to be foreclosed through trustee's sales, and that ML Manager, in its role

9   as agent for the investors involved in their loans and pursuant to the authorization in

10   Paragraph V of the Confirmation Order, would take possession of and liability for certain

11   properties, enter into agreements and contracts to market and sell those properties, execute

12   notes and deeds of trust to secure obligations created by the settlement agreements, and

13   begin the process of releasing some or all of the guarantees pledged under the loans at

14   issue depending on certain conditions in the agreements.   Significantly, the agreements

15   provide that the Grace Entities or their designees (i.e., their third-party creditors) would be

16   paid a certain amount of money from the sale proceeds from two of the properties they

17   gave up.   The Grace Entities have relied upon those revenue sources in negotiating

18   separate settlements with their own creditors.

19      Pursuant to the terms of these settlement agreements, ML Manager filed with the

20   bankruptcy court a motion to approve the settlements with the Grace Entities.   The Rev-

21   Op Group filed objections to the settlement.   The Bankruptcy Court set an evidentiary

22   hearing on the Rev-Op Group's Objection for July 7, 2010 and July 8, 2010.   The

23   Bankruptcy Court ultimately approved the settlements by order entered July 12, 2010.

24      One of the negotiated terms of the settlements was a deadline by which the

25   agreements were required to become effective.   The agreements provided that trustee's

26   sales, which were already scheduled, would be concluded immediately after the "Effective

FENNEMORE CRAIG, P.C.
PHOENIX

2337281.3/28149.010

- 4 -

Date."  During the hearings before the Bankruptcy Court, the importance of the Effective Date and the actions that were scheduled to take place immediately after the Effective Date were discussed at length.  As such, once the Court announced its decision to approve the settlements, the Court offered to set a date for any motion by the Rev-Op Group to stay the effectiveness of the order pending appeal.  The Rev-Op Group declined the Court's invitation, and never filed a motion for stay despite knowing that the Effective Date was imminent, and that trustee's sales were scheduled to occur shortly thereafter.  Indeed, the Rev-Op Group took no action whatsoever to stay the consummation of the settlement agreements.

Fourteen (14) days after the entry of the Order approving the settlement agreements, and with no stay pending appeal having been requested or issued, the settlements went effective and closed on July 27, 2010.  At the closing, ML Manager signed and delivered to the Grace Entities, on behalf of the Loan LLCs, promissory notes and recorded deeds of trust on two of the properties.  On or about July 27, trustee's sales were conducted on three of the loans, and the Loan LLCs and the Pass-through Investors, through their agent, ML Manager, took possession of and liability for those properties.  On or about August 5, a trustee's sale was conducted on a fourth loan, and the Loan LLC and the Pass-through Investors, through their agent, ML Manager, took possession of and liability for this property.  Attached as Exhibits 2 through 5 are the Trust Deeds that have been recorded as a result of the trustee's actions.  Two of the properties that were the subject of the trustee's sales have partially-secured, incomplete vertical structures on them.  There could be substantial liability and exposure as a result of ML Manager's ownership and operation of these properties.  As such, ML Manager has acquired insurance and entered into contracts with regard to these properties.  ML Manager is also in the process of marketing and seeking contract for sale for these properties.  It has entered into listing agreements and other agreements with regard to the properties.  As a

result, the parties' rights with regard to the properties and the claims that were the subject of the settlement agreements have been inextricably altered as a result of the consummation of the settlement agreements. (Attached hereto as Exhibit 6 is a declaration of Mark Winkleman, ML Manager's Chief Operating Officer, explaining the change in the parties' respective rights that has occurred as a result of the consummation of the settlement agreements.)   Simply stated, the parties' rights have been altered by consummation of the settlements, which moots the issues raised on appeal.

## II.   LEGAL ARGUMENT

### A.   The Rev Op group's appeal is moot.

To preserve justiciability of an appeal of a bankruptcy court's order, it is absolutely incumbent on the appellant to diligently pursue all of its available remedies to obtain a stay of the objectionable order.  *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981) ("If an appellant fails to obtain a stay after exhausting all appropriate remedies, that well may be the end of his appeal.").  If the appellants fail to obtain this stay, the appeal becomes moot if a comprehensive change of circumstances occurs that renders consideration of the merits of the appeal inequitable.  *Id.*  On numerous occasions, courts in the Ninth Circuit have held that when a settlement agreement approved by a bankruptcy court is "substantially consummated," an appeal of the bankruptcy court's approval of the settlement becomes moot.  *See, e.g., Kovacevich v. Munding (In re Spokane Raceway Park, Inc.)*, 329 Fed. Appx. 86 (9th Cir. 2009) (affirming B.A.P); *Unaffiliated Shareholders v. Mega-C Power Corp. (In re Mega-C Power Corp.)*, 295 Fed. Appx. 242 (9th Cir. 2008) (same).

In *Mega-C Power*, the bankruptcy court issued an order approving a settlement and the objecting party appealed.  *Id.* at 243.  The appellee filed a motion to dismiss claiming the appeal was moot.  The Court of Appeals for the Ninth Circuit granted the appellee's motion holding, without reaching the merits, that the appeal was moot because the parties

had already substantially consummated the settlement by transferring certain assets.  The Court held:

> An appeal becomes equitably moot when the '[a]ppellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court,' thus 'permitt[ing] such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal.

*Id.* (quoting *In re Focus Media, Inc.*, 378 F.3d 916, 923 (9th Cir. 2004).  The Court also held that "it is *obligatory* upon [an] appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."  *Id.* (quoting *Roberts Farm*, 652 F.2d at 799).

Similarly, in *Kovacevich* the Court of Appeals for the Ninth Circuit again affirmed the dismissal of the appeal of an order approving a settlement after substantial consummation of that settlement. *Kovacevich,* 329 Fed. Appx. at 86.  In doing so, the Court acknowledged that "[a]lthough dismissing an appeal in this manner 'places a heavy burden on aggrieved party-appellants in bankruptcy case,' we are satisfied that this burden 'is justified to prevent frustration of orderly [bankruptcy] administration.'"  *Id.* Furthermore, in both *Mega-C* and *Kovacevich*, the Court pointed out that the appellants had not diligently pursued their attempts to stay the execution of the settlement pending appeal.

Here, the result is no different and the appeal is moot.  The Rev-Op Group did not take <u>any</u> steps to stay the execution of the settlements pending appeal.  In fact, the Rev-Op Group declined to reserve or even discuss scheduling a date for a hearing on a potential stay motion, despite the Court's suggestion that the topic be discussed.   The Rev-Op Group took no action whatsoever to seek a stay.  By failing to act, the Rev-Op Group waived any right to appeal or object to the settlements.  The Rev-Op Group knowingly

permitted ML Manager and the Grace Entities to substantially consummate the settlements by transferring ownership of the subject properties to the applicable Loan LLCs and Pass-Through Investors, and be delivering and recording promissory notes and deeds of trust to the Grace Entities or their designees to secure payment of new obligations created under the settlements.  Accordingly, this appeal is moot.  *See, e.g.,* *Roberts Farms*, 652 F.2d at 798 ("If an appellant fails to obtain a stay after exhausting all appropriate remedies, that well may be the end of his appeal.").

**B.      The issues raised by the Rev-Op Group constitute an impermissive attack on the Plan**

Additionally, the appeal is improper because it constitutes an impermissive collateral attack on the Plan.   In its statement of issues on appeal, the Rev-Op Group identified fives separate issues to be decided by this court:

1.   Whether the Bankruptcy Court erred in entering the Order and granting ML Manager's Motion to Approve Settlements With Grace Entities [Docket #2743] (the "Motion").

2.   Whether the Bankruptcy Court erred in concluding that it had jurisdiction to rule on the issues presented in the Motion, pursuant to the Plan of Reorganization [Docket #1532] (the "Plan") and the Order Confirming Investors Committee's First Amended Plan of Reorganization Dated March 12, 2009 [Docket #1755] (the "Confirmation Order").

3.   Whether the Bankruptcy Court erred in concluding that the Plan and Confirmation Order gave ML Manager authority to act as the agent of the Rev Op Group in entering into the settlements and that the members of the Rev Op Group are bound thereby.

4.   Whether the Bankruptcy Court erred in improperly granting to ML Manager broad, prospective authority to "implement the Settlements," including the measures provided in paragraphs (c) and (d) of the Order.

5.   Whether the Bankruptcy Court erred in granting the Motion in light of ML Manager's failure to fulfill its fiduciary duties to the Rev Op Group.

However, these issues constitute an impermissive attack on the Plan as they seek to question the Bankruptcy Court's authority to approve the settlements reached through the mediation required by the Plan.   The Supreme Court recently held that these types of

collateral attacks on binding final judgments are improper.  *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1376 (2010).

In *Espinosa*, the debtor's plan contained a provision that provided for discharge of the interest accumulated on the debtor's student loans without the procedural steps normally required to discharge this debt.  *Id.* at 1374-75.  The lender submitted a proof of claim and received a copy of the plan, but neither objected to the plan nor appealed the confirmed plan.  *Id.* at 1374.  Later after discharge, the lender filed a motion to set aside the judgment.  The bankruptcy court denied the lender's motion and the lender appealed. *Id.*

The Supreme Court agreed with the bankruptcy court and affirmed the Ninth Circuit Court of Appeals, recognizing that the bankruptcy court's order confirming the debtor's proposed plan was a final judgment.  *Id.* at 1382.  The Court held that "[o]rdinarily, the finality of a Bankruptcy Court's orders following the conclusion of direct review would stand in the way of challenging their enforceability."  *Id.* at 1376 (quoting *Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2198 (2009).  The Court noted that Rule 60 provides an exception to finality under a limited set of circumstances, such as where the judgment was void.  *Id.*  However, the Court held that a judgment is not void solely because it contains a legal error that could have been reversed on appeal.  *Id.* at 1377.  The Court held that the debtor's plan contained a legal error, but that the lender's failure to appeal the confirmation of the plan deprived the lender of any further review of the relevant plan provision.  *Id.*

Here this Court should dismiss the Rev-Op's appeal to the extent that it attempts to attack the Plan's dispute resolution procedures.  As noted above, the Confirmation Order confirming the Plan required that ML Manager and the Grace Entities participate in mediation and binding arbitration.  Neither the Rev-Op Group nor any other party appealed the Confirmation Order.  Accordingly, the Confirmation Order and Plan are a

final and binding judgment.  The issues identified by the Rev-Op Group on appeal constitute an impermissive collateral attack on the Plan, inasmuch as they attempt to deprive the bankruptcy Court of jurisdiction to approve the settlements reached through the dispute resolution process required by the Plan.  Accordingly, this Court should dismiss the appeal insofar as it seeks to attack any of the Plan's provisions.

**III.   <u>CONCLUSION</u>**

The appeal is moot and must be dismissed.  Moreover, the issues raised on appeal constitute an impermissive collateral attack on the binding Plan.

Respectfully submitted this 19th day of August, 2010.

FENNEMORE CRAIG, P.C.


By   /s/ *Keith L. Hendricks*
Cathy L. Reece
Keith L. Hendricks
Attorneys for ML Manager LLC

COPY of the foregoing sent via email
to the following parties:

Robert J. Miller
Bryce A. Suzuki
Bryan Cave, LLP
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004
rjmiller@bryancave.com
bryce.suzuki@bryancave.com

Donald F. Ennis
Snell & Wilmer
One Arizona Center
Phoenix, AZ 85004
dennis@swlaw.com

  /s/ *L. Carol Smith*