**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Rev Op Group, | ) | No. 10-1665-PHX-MHM |
| Appellant, | ) | BK NO. 08-bk-0765 |
| vs. | ) | **ORDER** |
| ML Manager, LLC, et al., | ) | |
| Appellees. | ) | |
| ——————————————— | ) | |
| In Re: Mortgages Ltd. | ) | |
| Debtor | ) | |

     Before the Court is appellee ML Manager LLC's ("ML Manager") Motion to Dismiss the Rev-Op Group's Appeal of the Bankruptcy Court's order approving settlements with Grace Entities, which is joined by appellees the Grace Entities. (Docs. 7 and 9).  In addition to the motion, the Court has also reviewed the Rev Op Group's response (doc. 10) and the replies by ML Manager and Grace Entities, as well as ML Manager's Supplement to the motion (doc. 17).  In addition, the Court has reviewed the order granting the Motion to Approve Settlements with Grace Entities issued by the Bankruptcy Court, which the Rev Op

1   Group is appealing in this matter.  Having heard oral argument on January 25, 2011, the
2   Court issues the following order.

3   **I.      Background**

4           **A.      The Mortgages Limited Bankruptcy**

5           This case, along with a number of others pending before this Court, arises out of the
6   Chapter11 bankruptcy proceedings for Mortgages Limited, case number BK NO. 08-07465.
7   The Court notes by way of background that Mortgages Limited ("Mortgages Ltd.") once held
8   a $900 million portfolio of loans and had over 1800 investors.  Investors in Mortgages Ltd.
9   owned fractional interests in promissory notes and deeds of trust.  Investors entered
10  agreements with Mortgages Ltd. prior to making these investments. Because investors had
11  fractional interests in the various mortgages, when borrowers defaulted and the properties
12  were foreclosed upon, investors became part owners of properties as tenants in common with
13  other investors who had interests in the same loan.

14          On June 28, 2008, Mortgages Ltd. filed for Chapter 11 bankruptcy.  The company was
15  thus reorganized pursuant to a plan that was confirmed by the Bankruptcy Court on March
16  20, 2009 ("the Plan").   As part of the Plan, an entity called ML Manager, LLC ("ML
17  Manager"), the appellee in this case, was created to manage and operate the loans in the
18  portfolio.  The original investors for the most part transferred their interests to 49 separate
19  Loan LLC's. A number of investors, referred to as "pass through investors" did not transfer
20  their interests.   As part of the Plan, ML Manager took out $20 million in exit financing (the
21  "Exit Financing") to help keep the company afloat during the reorganization.

22          **B.      General Dispute Between the Rev Op Group and ML Manager**

23          After confirmation of the Plan, a dispute arose regarding the agency authority of ML
24  Manager to take action on behalf of "pass through investors."  A group of "pass through
25  investors" referred to as the Rev Op Group, the appellants in this case, took the position that
26  ML Manager cannot sell property in which Rev Op Group members have an interest without
27  the Rev Op Group's approval and consent.  ML Manager asserted that it had the agency
28  power to sell property in which Rev Op investors have an interest without their consent.  This

1    conflict has lead to a number of disputes within the bankruptcy court as well as a number of

2    appeals of Bankruptcy Court orders currently pending before this Court.

3                    **C.      The Dispute with Grace Entities and Settlements**

4            The Grace Entities, the other appellees in this case, were a group of affiliated

5    borrowers who obtained six loans from Mortgages Ltd. to develop five separate projects.

6    Like other Mortgages Ltd. loans, interests in the Grace Entity loans were sold to various

7    investors, including members of the Rev-Op Group.  The Grace Entities alleged that

8    Mortgages Ltd. had caused them to incur substantial damages due to its failure to fully and

9    timely fund those loans and two of the Grace Entities filed the initial involuntary bankruptcy

10   petition against Mortgages Ltd. in June 2008.

11           The Grace Entities participated in the bankruptcy proceedings and initially objected

12   to the reorganization Plan.  Their objections, however, were resolved by an agreement that

13   ML Manager would mediate and if necessary arbitrate the claims with the Grace Entities

14   loans.  Paragraph V of the Confirmation Order describes the mediation procedure and states

15   in part:

16           The parties required to participate in the Grace ADR shall be the Grace
             Entities, the Grace Guarantors, ML or its successor ML Manager, LLC and
17           any Loan LLC formed to own an interest in any loan with one or more of the
             Grace Entities.  ML, ML Manager, and any of the Loan LLCs will be deemed
18           to be acting in their interest and in their capacity, if any as the agent for any
             and all Grace Investors who retain an ownership in any note or deed of trust
19           issued in connection with any loan between ML and the Grace Entities.

20   According to the briefs, the Rev Op Group was represented by counsel present in the

21   courtroom when the settlement with the Grace Entities was described on the record and did

22   not object at that time.  The Rev Op Group also did not object when the draft confirmation

23   order describing the mediation procedure was circulated, nor did they object when the

24   Confirmation Order was lodged with the Bankruptcy Court.   The Rev Op Group did not

25   appeal from the Confirmation Order.

26           During the mediation process, in which the Rev Op Group did not directly

27   participate, ML Manager and the Grace Entities reached a global settlement on the different

28   disputes concerning the various Mortgages Limited loans.  One contingency of the approved

                                            - 3 -

settlement agreements was that they all had to be approved and implemented or none of them would be effective, in part, because the principals of the Grace Entities were unwilling to release their claims on some projects without a global settlement on all projects.

ML Manager then filed a motion to approve settlements with Grace Entities, asking the Bankruptcy Court to enter an order approving the settlements, which was joined by the Grace Entities. The Rev Op Group filed an objection and reservation. On June 30, 2010, ML Manager, the Grace Entities and the Rev Op Group filed a joint pretrial statement regarding contested matters, which outlined the dispute between the parties. The Bankruptcy Court held an evidentiary hearing on the Motion on July 7, 2010, at which it took evidence in support of the Motion. The Bankruptcy Court also heard oral arguments at a hearing on July 8, 2010 and at the conclusion of the hearing the Court made findings of fact and conclusions of law on the record.

On July 12, 2010, the Bankruptcy Court issued an order approving the motion to approve the settlements with Grace Entities. The Order granted ML Manager's motion and approved the settlements and overruled the objection and reservation. The Bankruptcy Court also held that ML Manager was authorized under the Confirmed Plan and the Confirmation Order to enter into the Grace Entities settlements and to implement the terms therein. The Bankruptcy Court also held that ML Manager was authorized to give the releases provided for in the settlements, enter into the notes and deeds of trust and pay the settlement payments to the Grace Entities out of the sales of two of the properties.

The Rev Op Group did not seek a stay of the Bankruptcy Court's Order approving the settlements. On July 20, 2010, the Rev Op Group filed a notice of appeal to the Bankruptcy Appellate Panel of the Ninth Circuit. On July 29, 2010, ML Manager requested transfer of the case to the District Court and on August 4, 2010, the matter was transferred to this Court.

### D.      ML Manager's Motion to Dismiss

On August 19, 2010, ML Manager filed a Motion to Dismiss the Rev Op Group's Appeal of the Bankruptcy Court's Order approving the settlements with the Grace Entities.

1    The motion argues that the Rev Op Group's appeal is moot because the appellant failed to
2    seek or obtain a stay of the order from the Bankruptcy Court and the settlement has now been
3    substantially consummated; ownership of the subject properties has been transferred to the
4    applicable Loan LLC's, promissory notes and deeds of trust have been delivered to the Grace
5    Entities and their designees to secure payment of new obligations created under the
6    settlements.  ML Manager also argues that the issues raised by the Rev Op Group constitute
7    an impermissible collateral attack on the Plan.  On August 23, 2010 the Grace Entities filed
8    a joinder to the motion to dismiss.

9        In response, the Rev Op Group argues that the appeal is not moot because the
10   Bankruptcy Court's approval of the settlement agreements and the subsequent transactions
11   pursuant to the settlement agreements are not so complex as to be too difficult to unwind.
12   In addition, the Rev Op Group argues that even if the foreclosures on the properties are
13   irreversible, significant issues relating to the settlements remain live for adjudication by this
14   Court, which it argues can fashion effective relief.  The Rev Op Group stresses that none of
15   the properties transferred to ML Manager has been sold to third parties or refinanced as
16   proposed in the settlement agreements and no proceeds of such sales have been distributed,
17   so that to the extent the Court determines that the transfers of the properties cannot be
18   unwound, issues still exist with respect to the subsequent sale or refinancing of the properties
19   by ML Manager and the distribution of proceeds.  The Rev Op Group also argues that its
20   appeal seeks only review of the Bankruptcy Court's interpretation of the Plan and
21   Confirmation Order and does not constitute a collateral attack of the plan.

22       ML Manager and the Grace Entities both filed replies in support of the motion to
23   dismiss.  In their reply, the Grace Entities argue that because the Bankruptcy Court approved
24   the settlements and the Rev Op Group failed to request or obtain a stay of the order, the
25   Grace Entities, relied upon the finality of the settlements by using the promissory notes they
26   received as a source of "payment" to reach settlements with their own creditors.  According
27   to the reply, one of the promissory notes was made payable to the Grace Entities' counsel,
28   two of the other secured promissory notes have been assigned to another of the Grace Entities

1    creditors pursuant to a settlement agreement that resolves four lawsuits with one or more of

2    the Grace Entities.  The Grace Entities are also in the process of negotiating settlements with

3    additional creditors in which they contemplate further assignments of the remaining secured

4    promissory notes.   The Grace Entities also assert that the Bankruptcy Court's ruling that it

5    had the authority to Approve the Settlements pursuant to Paragraph V of the Plan

6    Confirmation order was proper and that this does not impact any agency authority issues that

7    may be pending in the adversary proceeding between ML Manager and the Rev Op Group.

8    Nevertheless the Grace Entities argue that the Rev Op Group's challenge of the Bankruptcy

9    Court's ruling on this issue is a collateral attack by the Rev Op Group on the Plan and

10   Confirmation Order.

11          In its reply, ML Manager outlines the various events that have occurred since approval

12   of the settlements that allegedly further moot the Rev Op Group's appeal of the Bankruptcy

13   Order.  These include trustee sales of properties, vesting of property title, lawsuits being filed

14   against new owners of one parcel, and a number of steps that have been taken to sell two of

15   the properties including broker agreements, the issuance of title insurance, the opening of

16   escrow accounts and other entanglements with third parties.

17          On October 28, 2010,  ML Manager also filed a Supplement to its motion to dismiss

18   in which it outlines further events that allegedly moot this appeal.  The Rev Op Group did

19   not file any objection to the supplement.  In the supplement, ML Manager explains that

20   following the trustee sales, it aggressively marketed and sought buyers for possibly the most

21   valuable of the five projects, referred to as the Osborne III Property. ML Manager ultimately

22   executed a purchase agreement with a third-party buyer for $19.5 million.  ML Manager filed

23   a motion to approve the sale with the Bankruptcy Court.  The Rev-Op Group objected to the

24   sale, but not the purchase price.  On September 21,2010, the Bankruptcy Court entered an

25   order approving the sale of the subject property.  The Rev-Op Group did not appeal the sale

26   order or seek a stay of the sale.  ML Manager used proceeds from the sale to make a number

27   of payments to third parties, including tax and lien payments, payments to the title insurer,

28   escrow agent and a large payment to the Exit Financier.

1   On January 25, 2011 the Court heard oral argument from ML Manager, the Grace

2   Entities and the Rev Op Group.

3   **II.   Discussion**

4       "A case is moot only if interim events have 'completely and irrevocably eradicated the

5   effects of' an improper ruling." In re Pintler Corp., 124 F.3d 1310, 1312 (citing Wong v.

6   Dept. of State, 789 F.2d 1380, 1384 (9th Cir. 1986))   The party asserting mootness has a

7   heavy burden to establish that there is no effective relief remaining for a court to provide.

8   Id. (citing Northwest Environmental Defense Center. v. Gordon, 849 F.2d 1241, 1244-45

9   (9th Cir. 1988).   In bankruptcy cases, however, where the Court approves asset sales or

10   complicated property transfers that affect third parties, unwinding transactions can become

11   impractical and rather impossible.  As a result, appellants must usually obtain a stay to avoid

12   a ruling that an appeal from a bankruptcy ruling approving a sale or asset disposition is moot:

13   "The Rule that failure to obtain a stay pending appeal renders the issue moot did not originate

14   in the Bankruptcy Rules. Rather, it is a judicial doctrine which developed from the general

15   rule that the occurrence of events which prevent an appellate court from granting effective

16   relief renders an appeal moot, and the particular need for finality in orders regarding stays

17   in bankruptcy." Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1424 (9th Cir. 1985);

18   see also Onouli-Kona Land Co v. Richards, 846 F.2d 1170, 1173 (9th Cir. 1988).

19       In the Ninth Circuit, "[f]inality in bankruptcy has become the dominant rationale for

20   our decisions; the trend is toward an absolute rule that requires appellants to obtain a stay

21   before appealing a sale of assets." Ohouli-Kona, 846 F.2d 1170. Therefore, "[I]t is obligatory

22   upon appellants . . . to pursue with diligence all available remedies to obtain a stay of

23   execution of the objectionable order [] if the failure to do so creates a situation rendering it

24   inequitable to reverse the orders appealed from." In re Roberts Farms, Inc., 652 F.2d at 798

25   (dismissing appeal and noting that "Appellants flunked the first step" by not applying to the

26   bankruptcy judge for a stay of orders including a settlement order and giving no adequate

27   reason for not doing so); see also In re Suchy, 786 F.2d 900, 902 (9th Cir. 1986). Courts have

28   acknowledged that this approach "places a heavy burden on aggrieved party-appellants in

1    bankruptcy cases" and that "[i]f an appellant fails to obtain a stay after exhausting all

2    appropriate remedies that well may be the end of his appeal." Roberts Farms, 652 F.2d at

3    798.   However, Courts find that this heavy burden is "is justified to prevent frustration of

4    orderly administration of estates. . ." Id. at 798.

5         Although the failure to obtain a stay will generally moot an appeal from a bankruptcy

6    order approving a property sale, there have been some exceptions in cases where it can be

7    argued that the court can still fashion relief.  As one court noted, however, "the exception has

8    operated in only where real property is sold to a creditor who is a party to the appeal' where

9    the foreclosure sale is subject to statutory rights of redemption.'" Onouli-Kona, 846 F.2d at

10   1172-73 (citing In re Sun Valley Ranches, Inc., 823 F.2d 1373, 1375 (9th Cir. 1987)) . Such

11   an exception makes sense because in such an instance the sale is not truly final.  Id.; see also

12   Suter v. Goedert, 504 F.3d 982 (9th Cir. 2007) (sale of litigation rights which led to dismissal

13   of appeal was not so final because of possibility of filing special writ).

14        In this case, the Rev Op Group did not obtain or even seek a stay of the bankruptcy

15   order approving the settlements, which involved transferring title to various properties in

16   exchange for promissory notes used to release the Grace Entities' creditors – third parties to

17   this transaction.  Thus, although the settlement was not technically an asset sale, the complex

18   property transactions have progressed to the point that under the general rule applied to

19   bankruptcy orders approving property transactions, this appeal is now moot.  The Rev Op

20   Group has not asserted anything remotely akin to a statutory right of redemption, and

21   contrary to the Rev Op Group's assertions, the transactions that have taken place as a result

22   of the approved settlements are complex, involve third parties and cannot be unwound.  The

23   settlements, reached on condition that they all be consumated together,  allowed the Rev Op

24   Group to foreclose on properties held by the Grace Entities in exchange for promissory notes.

25   Title to properties was transferred and the promissory notes were used by the Grace Entities

26   to pay third parties.  At least some of the properties have been marketed and at least one has

27   now been sold to a third party and the proceeds from that sale distributed to third parties as

28   well.  Contrary to the Rev Op Group's assertions, under these circumstances the fact that the

1    Grace Entities, with whom the settlements were reached, are parties to this appeal does not

2    alter the fact that the complex transactions are irreversible and the appeal moot.  See Algeran

3    , 759 F.2d at 1424("the fact that the purchaser is a party to this appeal does not change the

4    applicability of the mootness rule"); Onouli-Kona, 846 F.2d at 1173 ("No such justification

5    supports a broader exception for all real property sold to a creditor who is a party to the

6    appeal.")

7            The Rev Op Group argues that its failure to obtain a stay does not render the appeal

8    moot, citing cases that either do not support its position or are importantly distinguishable.

9    One case cited by the Rev Op Group, In re Int'l Envtl. Dynamics, Inc., 718 F.2d 322, 326

10   (9th Cir. 1983) involved only the appeal of an order concerning attorneys' fees, a purely

11   monetary transaction which could more easily be unwound than the complex property

12   transfers that have occurred as the result of the settlements with the Grace Entities.  The other

13   case cited by the Rev Op Group, In re PW, LLC, 391 B.R. 25,37 (B.A.P. 9th Cir. 2008)

14   actually held that with regard to a property sale approved by a bankruptcy order appealed by

15   a creditor "complexities that cannot be easily undone arise with respect to the sale.  These

16   complexities and the impact on third parties make review of the sale ... equitably moot."

17   Although the court asserted that it could reverse the portion of Bankruptcy Court's order

18   stripping the lien of particular creditors, that portion of the holding is distinguishable in

19   important respects from this case.  As an initial matter, the Court in In re PW was applying

20   Section 363 of the Bankruptcy Code, which is not applicable here.  More to the point, the

21   Rev Op Group is not a lien holder who merely contests the Bankruptcy Court's "free and

22   clear" transfer of a property to a purchaser seeking to reinstate the lien so that the debtor can

23   repay the lien holder a fixed sum.  Rather, the Rev Op Group objects to the entire settlement

24   process with the Grace Entities from the beginning, asserting that the complex resolution that

25   was reached and has now been implemented beyond undoing, required each of its members'

26   individual approval.  The fact that the members of Rev Op Group might ultimately be

27   satisfied with payment of some monetary sum from ML Manager does not change the reality

28   that their claims undermine the entire settlement effort with the Grace Entities and that

resolution of their claims would require undoing the transactions in order to return the parties to the pre-settlement status quo. Other than to conclusively state that the transactions that have occurred are not so complex as to be too difficult to unwind, the Rev Op Group offers no real suggestion as to how the Court could do so.

The Rev Op Group argues that even if the transactions resulting from the settlements cannot be undone, the Court can still address its appeal on the merits since the Rev Op Group challenges the Bankruptcy Court's interpretation of the Confirmation Order and argues it was not authorized to bind the Rev Op Group in reaching the Grace Settlements. As one Court put it, however,

> Were we to deny the motion to dismiss for mootness and on consideration of the merits reverse the order of the [lower court], what would be the result? Are we not quite patently faced with a situation where the plan of arrangement has been so far implemented that it is impossible to fashion effective relief for all concerned?

Roberts Farms, 652 F.2d at 797; see also Algeran, Inc., 759 F.2d at 1423. That excerpt summarizes the situation this Court faces with regard to the Bankruptcy Court's approval of the settlements with the Grace Entities. In light of how far the settlements have been implemented, the Court cannot practicably address the merits of the Rev Op Group's appeal.

**III.     Conclusion**

The Court emphasizes that the ruling that this particular appeal is moot is confined to this case only. The Court does not intend for its ruling on this appeal to serve as a ruling on other pending appeals from the Mortgages Ltd. bankruptcy. Each of those cases will be decided in turn. The Court is merely holding that with regard to the Grace Entities settlements, the appeal is moot because the appellants failed to obtain a stay of the bankruptcy order and because the transactions that have transpired as a result cannot be unraveled.

Because the Court dismisses this appeal as moot on the basis of the appellant's failure to seek a stay of the bankruptcy court's order and because the settlements have been irreversibly consummated, the Court does not address appellee's claim that the issues raised by the Rev-Op Group constitute a collateral attack on the bankruptcy plan.

Accordingly,

**IT IS HEREBY ORDERED** granting ML Manager's Motion to Dismiss the appeal (Doc 7).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this action.

DATED this 31st day of January, 2011.

Mary H. Murgula
United States District Judge